IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE BRETHREN MUTUAL INSURANCE :
COMPANY, :
                Plaintiff :
                 :
  v. : 3:CV-06-0779
                 : (JUDGE VANASKIE)
ANNE TRIBOSKI-GRAY, :
                Defendant :

## MEMORANDUM

At issue in this declaratory judgment action presented on cross motions for summary judgment is whether Defendant Anne Triboski-Gray made a written request for limits of uninsured/underinsured motorist ("UM/UIM") coverage below her chosen limits of third party bodily injury coverage. Ms. Triboski-Gray's insurer, Plaintiff Brethren Mutual Insurance Company ("Brethren Mutual"), contends that her signature on Brethren Mutual's insurance application constituted the required written request for UM/UIM coverage limits of $35,000, as opposed to the $250,000 single person coverage limit for bodily injury sustained by a third party. Concluding that Ms. Triboski-Gray's signature on an application completed by the insurance company's agent does not constitute a written request for UM/UIM coverage limits below the coverage requested for bodily injury, I will deny Brethren Mutual's motion and grant Triboski-Gray's motion.

I. BACKGROUND

In the Spring of 2002, Frank Nauman, Ms. Triboski-Gray's former boyfriend, transferred his 1996 GMC Jimmy to her. Nauman's insurance policy on the vehicle had been procured through Michelle Grace of Business Insurance Specialists Limited ("BISL"). Nauman's policy was issued by National Grange Mutual Insurance Company, and provided a combined single bodily injury liability limit of $500,000 and UM/UIM limits of $35,000. (Dep. Grace, at 14-15; Pl.'s SMF, at ¶ 7.)

On March 25, 2002, Ms. Triboski-Gray telephoned BISL to receive a quote for insurance on the Jimmy. (While You Were Out Message, Dkt. Entry 14-6.) About a week later, on April 1, 2002, Ms. Triboski-Gray again telephoned Ms. Grace to follow up on her insurance quote. (While You Were Out Message, Dkt. Entry 14-7.) According to Ms. Grace, during the phone conversations, they spoke "about mirroring the coverage that Frank [Nauman] had . . . ."[1] (Dep. Grace, at 20-21.) In this regard, Ms. Triboski-Gray expressed concern about the potential costs of automobile insurance. (Dep. Triboski-Gray, Dkt. Entry 14-3, at 26, 40 & 44.) She requested the best coverages that she could afford. (Id. at 42.) As a result of the phone conversations, Ms. Grace developed a quote for Ms. Triboski-Gray with $250,000 per person and $500,000 per accident bodily injury liability and $35,000 per person and per accident UM/UIM coverage,

---

[1]When questioned about whether she specifically mentioned the liability limits under Mr. Nauman's policy, Ms. Grace did not remember. (Dep. Grace, at 24.)

attempting to mirror Mr. Nauman's coverage. (Quote Information Summary, Dkt. Entry 14-8, at 1-3; Dep. Grace, at 30.)

On April 11, 2002, Ms. Grace traveled to Ms. Triboski-Gray's residence with a prepared application for insurance coverage. (Dep. Grace, at 26.) While there, Ms. Grace advised Ms. Triboski-Gray that she could not completely duplicate Mr. Nauman's insurance policy because Brethren Mutual did not offer the same coverage. (Id. at 28.) The bodily Injury liability on Mr. Nauman's policy of $500,000 was not available at Brethren Mutual, so Ms. Grace proposed coverage of $250,000/$500,000/$100,000 (per person/per accident/property damage). (Id.; Dep. Triboski-Gray, at 28-30.) As to UM/UIM coverage, Ms. Grace proposed coverage of $35,000 per person and per accident.

Although Ms. Triboski-Gray does not recall discussing with Ms. Grace the matter of UM/UIM coverage, (Dep. Triboski-Gray, at 31), Ms. Grace testified that she told Ms. Triboski-Gray of the coverage limits proposed on the application, and that Ms. Triboski-Gray could elect UM/UIM coverage in amounts equal to the limits of the bodily injury coverage or no coverage at all. (Grace Dep. at 52.) According to Ms. Grace, Ms. Triboski-Gray said that $35,000 in UM/UIM coverage "was enough." (Id.)

At the conclusion of the visit, Ms. Triboski-Gray signed the required forms and wrote out a check for the premium. In particular, Ms. Triboski-Gray signed the statutorily-mandated

3

"Important Notice"[2] (Important Notice, Dkt. Entry 14-8, at 19), the Pennsylvania Personal Auto Application (P.A. Personal Auto Application, Dkt. Entry 14-8, at 15-16);[3] Uninsured and Underinsured Coverage Selection/Rejection forms (P.A. Auto Supp., Dkt. Entry 14-8, at 17-18); a First Party Benefits Coverage form (Dkt. Entry 14-8, at 20); the Tort Option Selection; the Collision Deductible Option form (id. at 21); and the Driver Improvement Course Credit/Passive Restraint Discount/Anti-Theft Discount form.  (Id. at 22.)

Ms. Triboski-Gray signed the UM and UIM selection/rejection forms in the sections reserved for rejecting the stacking of coverage.  The forms recited that the insured "underst[ood] that the coverage selection and limit choices indicated here will apply to all future policy renewals, continuations and changes unless I notify [the insurance company] otherwise in writing."  The forms, however, did not have any area designated for insertion of coverage limits, and there is nothing on the forms that indicated that UM/UIM coverage of $35,000 per person and per accident had been elected.[4]

---

[2] The Important Notice is a state-mandated form requiring insurance companies to make clear the availability of ceratin coverages, such as medical, income loss, accidental death, funeral, and UM/UIM.  Ms. Triboski-Gray signed this form, acknowledging that she understood the availability of these coverages.

[3] This document "consists of two separate pages and is not a two-sided document." (Stipulation, Dkt. Entry 19, ¶ 2.)

[4] Several months after Ms. Triboski-Gray purchased her insurance policy, Brethren Mutual revised its UM/UIM Coverage Selection/Rejection forms to include a specific designation of the coverage limits selected by the insured.   (Stipulation, Dkt. Entry 19, ¶ 1.)  It is undisputed that Ms. Triboski-Gray was never presented with the revised forms.

The UM and UIM selection/rejection forms signed by Ms. Triboski-Gray also recited, however, that the "limits of coverage that I am purchasing shall be reduced to the limits stated in the policy." The two-page Personal Auto Application prepared by Ms. Grace and signed by Ms. Triboski-Gray specified UM/UIM coverage of $35,000 per person and per accident. The coverage limits appear on the first page of the two-page application, and Ms. Triboski-Gray's signature appears on the second page. Ms. Triboski-Gray did not make any handwritten notation on the first page of the application. Above her signature, however, the application states that she has read the application and understands that "the coverage selection and limit choices indicated here . . . will apply to ally future policy renewals, continuations and changes" unless she notified Brethren Mutual otherwise in writing.

Ms. Triboski-Gray's insurance policy automatically renewed every six months. (Dep. Grace, at 58; Pl.'s SMF, at ¶ 31.) Ms. Triboski-Gray renewed her insurance policy twice without opting to change the terms and conditions, and continued to pay the premiums. (Renewal Declarations, Dkt. Entry 14-9, 32-40.)

On September 30, 2003, Ms. Triboski-Gray sustained personal injuries in an automobile accident. (Pl.'s Statement of Material Facts ("SMF"), Dkt. Entry 14, ¶ 1.) Thereafter, she initiated a claim against Brethren Mutual for UIM benefits. Brethren Mutual paid Ms. Triboski-Gray $35,000, but denied liability above the amount set forth on the policy application and policy declarations.

Ms. Triboski-Gray claims entitlement to UIM coverage of $250,000, the coverage limits for bodily injury sustained by a third party. Brethren Mutual has brought this action to obtain a declaration that the policy of insurance issued to Ms. Triboski-Gray limits coverage to $35,000, and that it has discharged its obligation to Ms. Triboski-Gray for injuries sustained as a result of the September 30, 2003 accident.

## II. DISCUSSION

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In this case, there is a dispute as to what was said to Ms. Triboski-Gray at the time she procured the Brethren Mutual policy. Ms. Grace contends that she explained that Ms. Triboski-Gray could elect UM/UIM coverage in the amount of her third party bodily injury coverage, and

that Ms. Triboski-Gray stated that $35,000 in coverage was sufficient.  Ms. Triboski-Gray disputes Ms. Grace's account.  Whether Ms. Triboski-Gray had actual knowledge of the limits of coverage, however, is not legally significant.  See Nationwide Ins. Co. V. Resseguie, 980 F.2d 226, 228 (3d Cir. 1992).  The dispositive question here is not whether Ms. Triboski-Gray was aware of the coverage limits; the controlling question is whether she made a written request for UM/UIM coverage limits below the coverage limits for third party bodily injury.  As to this dispositive question, the facts are not disputed.  Thus, summary adjudication of this case is warranted.

In determining which party is entitled to summary judgment in this diversity action, this Court must apply the substantive law of Pennsylvania.  See Nationwide Mutual Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).  Specifically, the legislative scheme governing UM/UIM coverage, as interpreted by the courts of the Commonwealth, must be assessed.  If the issue has not been resolved definitively by the Pennsylvania Supreme Court, this Court is to predict how the Commonwealth's highest court would resolve the issue.  Id.  In making this determination, this Court may disregard pertinent opinions of the Pennsylvania intermediate appellate courts only where there exist "'other persuasive data that the highest court of the state would decide otherwise.'"  Id.  (quoting West v. AT&T Co., 311 U.S. 223, 237 (1940).

The starting point for analysis here is section 1731 of the MVFRL, 75 PA. CONS. STAT. § 1731, which provides that a motor vehicle liability insurance policy shall not be issued "unless

uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage)." 75 PA. CONS. STAT. § 1731(a). This statutory provision is "a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734.'" Resseguie, 980 F.2d at 231.

Section 1734, however, provides that "[a] named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury." 75 PA. CONS. STAT. § 1734. As explained in Resseguie, 980 F.2d at 231:

> § 1734's language is plain and the Pennsylvania General Assembly's
> intention is clear. By its terms, a named insured may lower her statutorily
> provided UIM coverage limits by requesting in writing of her insurer to do so.
> The insurance company's obligation to issue a policy with UIM coverage in an
> amount equal to the policy's bodily injury liability coverage is not relieved
> unless it has received such a written request.

The Third Circuit predicted that "the Pennsylvania Supreme Court would narrowly and strictly construe the provision of the MVFRL that allows an insured to request lower UIM coverage limits than are mandated by § 1731." Id. at 232.[5]

---

[5] Significantly, in Blood v. Old Guard Ins. Co., 934 A.2d 1218, 1226 (Pa. 2007), the Supreme Court of Pennsylvania "agree[d] with the characterization of Sections 1731 and 1734

Although section 1734's requirement for a written request for lower UIM limits is to be construed strictly, no specific form for a written request for UM/UIM coverage limits that are less than the bodily injury liability coverage is required. Instead, this "writing may take any form." Fire & Cas. Co. of Conn. v. Cook, 155 F. App'x 587, 589 (3d Cir. 2005) (non-precedential) (citing Leymeister v. State Farm Mut. Auto. Ins. Co., 100 F. Supp. 2d 269, 272 (M.D. Pa. 2000)).

The absence of a specific form to request UIM limits that are below the otherwise required coverage limits is to be contrasted with the form required when a prospective insured elects not to purchase UM or UIM coverage. Section 1731(c.1) of 75 PA. CONS. STAT., entitled "Form of Waiver," provides:

> Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

---

offered by the Third Circuit . . . ."

75 PA. CONS. STAT. § 1731(c.1).  The Pennsylvania Supreme Court has read § 1731(c.1) as pertaining specifically to "situations in which outright waiver/rejection is attempted, as contrasted with requests for specific limits under Section 1734." Lewis v. Erie Ins. Exchange, 793 A.2d 143, 152 (Pa. 2002).  Accordingly, § 1731(c.1) applies to the outright waiver/rejection of UM/UIM coverage, and § 1734 applies to the selection of specific limits of UM/UIM coverage. Id. at 153.

      Courts have construed the MVFRL as requiring an insurance company to satisfy two requirements to show that an insured validly reduced UM/UIM benefits: "(i) the insured had notice of his rights under the MVFRL; and (ii) the insured voluntarily requested in writing that the limits of his UM/UIM coverage be lowered." State Farm Mut. Auto. Ins. Co., v. Vollrath, 132 F.App'x 414, 416 (3d Cir. 2005) (non-precedential) (citing Jiongo v. Nationwide Ins. Co., No. CIV. A. 97-2437, 1998 WL 381706, at *6 (E.D. Pa. July 8, 1998), aff'd, 203 F.3d 817 (3d. Cir. 1999)).

      With regard to the first requirement, the MVFRL contains a presumption that the insured has notice of available benefits and limits when the insured is provided with the statutorily-mandated  "Important Notice."

> It shall be presumed that the insured has been advised of the benefits and
> limits available under this chapter provided the following notice in bold print of
> at least ten-point type is given to the applicant at the time of application for
> original coverage, and no other notice or rejection shall be required:

75 PA. CONS. STAT. § 1791 ("Important Notice" form appended).  The "Important Notice" form

requires insurance companies to make certain benefits available to insureds, such as:

> uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages . . . .

75 PA. CONS. STAT. § 1791(6).  (Important Notice, Dkt. Entry 14-8, at 19.)  The form further indicates that "[y]our signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected."  (Id.)

      The presumption of knowledge, however, does not relieve the insurer of providing UM/UIM limits equal to third-party liability coverage absent the insured's written request for lower coverage limits.  As explained in Motorists Ins. Cos. v. Emig, 664 A.2d 559, 569 (Pa. Super. Ct. 1995), "in order for the conclusive presumption of Section 1791 to be effective, an insured must have actually selected coverage(s), and the selection process must first be in conformity with the law, i.e., in this case, with Section 1734."  Thus, the central question in this case is whether Ms. Triboski-Gray requested in writing lower UM/UIM coverage in compliance with § 1734.

      Brethren Mutual contends that Ms. Triboski-Gray's signature at the bottom of the two page Pennsylvania Personal Auto Application fulfills the writing requirement of § 1734.  Brethren Mutual asserts that there is no requirement that the writing be signed by the insured,

or that any specific form be used. (Pl.'s Mem. Supp. Mot. Summ. J., Dkt. Entry 15, at 12.)

While agreeing that no specific form for requesting lower UIM coverage is required, Ms. Triboski-Gray contends that a § 1734 request "must contain both the signature of the insured as well as an express designation of the amount of UIM coverage requested." (Def.'s Br. Supp. Mot. Summ. J., Dkt. Entry 18, at 4.) She argues that Brethren Mutual's auto application form is deficient for several reasons: the form is densely packed with information, the insured only signed it once, there is no separate signature block for UM/UIM coverage, the form was completed before it was presented to her, and Brethren Mutual established a form in 2003 to cover the scenario presented here. (Id. at 4 & 5.)

The Supreme Court of Pennsylvania has found that "requests for specific limits coverage . . . require not only the signature of the insured, but also, an express designation of the amount of coverage requested . . . ." Lewis, 793 A.2d at 153 (emphasis added). Thus, in accordance with the narrow and exact interpretation of § 1734 envisioned by both the Supreme Court of Pennsylvania and the Third Circuit, written evidence of an express designation, or an instance of asking, on behalf the requestor is required.

As noted by Brethren Mutual, the insurance application states:

> I have read the above application and I declare that to the best of my
> knowledge and belief all of the foregoing statements are true.
> . . . .
> I understand that the coverage selection and limit choices indicated here or in
> any state supplement will apply to all future policy renewals, continuations and
> changes unless I notify you otherwise in writing.

(Pennsylvania Personal Auto Application, at 16; Pl.'s Mem. Supp. Mot. Summ. J., at 12.) Brethren Mutual argues that the designation of UM/UIM limits of $35,000 made by Michelle Grace became Ms. Triboski-Gray's written request for such limits when she signed the insurance application.

Nowhere is it specified, however, that Ms. Triboski-Gray, in signing the application, is requesting specific UM/UIM coverage limits.[6] Ms. Triboski-Gray's signature does not show she requested, or elected, UM/UIM coverage limits. To hold otherwise would "create unintended ambiguities in the law," confusion, and blur the clear and narrow meaning of § 1734. Resseguie, 980 F.2d at 232; see Lewis, 793 A.2d at 153 (cautioning courts in construing § 1734 to lessen "the potential for confusion.").[7]

Indeed, the Pennsylvania Superior Court has held that an insured's signature at the end of an insurance policy application "merely evidences the insured's acceptance of the policy. . .," and "cannot amount to a statutorily enforceable waiver of uninsured/underinsured motorist coverage limits equal to bodily injury limits." Emig, 664 A.2d at 565 (internal citations omitted);

---

[6] Courts have found a valid waive-down when the insured's initials appear next to the UM/UIM limits. See Young v. State Farm Mut. Auto. Ins. Co., 54 F. App'x 365, 368 (3d Cir. 2002) (non-precedential); State Farm Mut. Auto. Ins. Co. v. Ciccarella, No. CIV.A.01-1211, 2002 WL 827138, at *5 (E.D. Pa. May 1, 2002). In this case, no initials are present.

[7] The situation presented here is in sharp contrast to that considered in Young, 54 F. App'x at 367-68, where the insured's initials were placed below the designated UM/UIM coverage limits. Initialing the designation of coverage limits avoids the ambiguity created by the insurer's agent completing a form application by plainly showing that the coverage amounts were requested by the insured and not simply asserted or assumed by the insurer's agent.

see also Cook, 155 F. App'x at 589 (requiring "a writing by the insured . . . ."). Moreover, "[i]n any doubtful or close cases, the court must interpret the intent of the legislature to provide the greatest coverage for the insured." Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F. Supp. 2d 425, 434 (M.D. Pa. 2006) (citing Emig, 664 A.2d at 566).

The Superior Court's opinion in Emig is persuasive. At issue in Emig was whether the insured's signature on a policy change request form which indicated lower UM/UIM coverages constituted a waiver of UM/UIM coverages equal to bodily injury liability limits. As in the matter sub judice, the insurer's agent, and not the insured, had specified reduced UM/UIM coverages on the policy change request form. In holding that the signature on the policy change form completed by the insurer's agent did not constitute the requisite written request contemplated by § 1734, the Superior Court relied upon the Third Circuit's holding in Resseguie, supra, that a Customer Service Request completed by the insurer's employee as a result of a verbal instruction from the insured's spouse did not constitute the insured's written request required by § 1734. 664 A.2d at 563-564. The Superior Court reiterated our Court of Appeals admonition that the insurance company obtain explicit written authorization from the named insured in order to write lower limits for UM/UIM coverage. Id. The Superior Court held that the insured's signature on the policy change form did not relieve the insurer of the obligation to provide UM/UIM coverage in the same amount as third party bodily injury liability limits even though the insured had been provided the "Important Notice" required by § 1791, explaining that "[t]he

absence of a written request by [the insured] pursuant to Section 1734, . . . would preclude her knowledge and understanding of lower UM/UIM coverages for purpose of Section 1791. She could not be presumed to have knowledge and understanding of that which she never selected in accordance with the law." Id. at 569. Accordingly, the Superior Court affirmed the trial court's declaratory judgment that UIM coverage was equal to the third party bodily injury liability limits.[8] Id.

In short, a written request from the insured with an express designation of coverage limits is required by § 1734. See Cook, 155 F.App'x at 589 (requiring a writing by the insured and finding that none of the three writings referred to by the insurance company satisfied § 1734 as they were not from the insured).[9] "It is a very simple, clear-cut rule for the insurance company to follow – to lower the limits it must insist on a written authorization signed by the

---

[8]The opinion of a state intermediate appellate court is considered to be in harmony with the view of the state supreme court unless there is persuasive data to the contrary. See Nationwide Mutual Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000). In this case, there is no data indicating the Supreme Court of Pennsylvania would not follow the Superior Court decision in Emig.

[9]It may be true that Ms. Triboski-Gray orally asked for reduced UM/UIM coverage. However, even if this occurred, her conversation does not amount to a written request. See Cook, 155 F. App'x at 589; Emig, 664 A.2d at 565 (whether the insured verbally requested a reduction in UM/UIM limits is irrelevant); Hinchey, 464 F. Supp.2d at 435-36 (e-mail from insured's broker may evidence intention to buy UIM coverage in an amount lower than the bodily injury limit, but does not satisfy § 1734).

15

named insured." Resseguie, 980 F.2d at 232.[10]

Brethren Mutual insists that Ms. Triboski-Gray's renewal of the policy on October 13, 2002, and March 13, 2003, evidence actual knowledge and understanding of UM/UIM coverage, relying on State Farm Mutual Auto. Ins. Co. v. Gillespie, 152 F.App'x 201, 205 (3d Cir. 2005) (non-precedential) and State Farm Auto. Ins. Co., v. Vollrath, 132 F.App'x 414, 416 (3d Cir. 2005) (non-precedential), Both cases, however, are distinguishable.

In Gillespie, the insurer, State Farm, sent Mr. Gillespie, a current policy holder, a renewal notice that contained a list of premium costs of various coverages, followed by the words, "PAY THIS AMOUNT," with the total printed below. Gillespie, 152 F.App'x at 203-205. The renewal statement also contained the following language:

> Due to a law change, . . . uninsured motor vehicle, coverage U has been replaced with new uninsured and underinsured motor vehicle coverage U with limits to equal your bodily injury liability limits. If you want these coverage limits, pay the amount due. If you want coverage U with your previous coverage U limits of $15,000/$30,000, pay [lower amount].

Id. at 203. Mr. Gillespie "elected to pay the lower amount set forth in the . . . renewal notice" and continued to pay that amount for nearly sixteen years. Id. The Court of Appeals found that "an insured requests lower UIM limits in writing when he has either remitted checks to the

---

[10]Significantly, commencing in July of 2003, Brethren Mutual began using forms that required the insured to specify the limits of UM/UIM coverage being selected, with the insured's signature coming immediately under the amount selected. See Stipulation of Counsel, Dkt. Entry 19. This form removes the ambiguity found here. As noted above, this new form was never presented to Ms. Triboski-Gray.

insurer for the lower amount or signed a form electing to retain lower UIM coverage limits." Id. at 204.

In this case, there is no written evidence that Ms. Triboski-Gray opted out of UM/UIM payments equal to her bodily injury payments or that she "elected" to pay the lower amount. Even though Ms. Triboski-Gray renewed her policy twice and only paid a premium commensurate with UM/UIM coverage of $35,000, she never made a written "election" of lower UM/UIM coverage, as did Mr. Gillespie.  See McKnight, 2007 WL 2702660, at *10.  (finding no writing satisfied the requirements of § 1734 because the insurer "had not produced a renewal notice in this case similar to the one at issue in Gillespie," even though the insured paid the premiums on the policy for twenty-two years).

Likewise, in Vollrath, a case similar to Gillespie, the insured, a current State Farm policy holder, received a "Premium Notice," which "noted the change in law requiring [insurers] to make available UM/UIM coverage in amounts equal to bodily injury coverage . . . ." Vollrath, 132 F.App'x at 417.  Included with the "Premium Notice" was an option for Mr. Vollrath to purchase lower coverage and an explanatory booklet advising him of his rights.  Id.  In concluding that State Farm complied with § 1734, the court noted that Mr. Vollrath continued to pay his premiums, bi-annually, over a seven year period, and signed a "Notice to named Insureds," stating he wanted to retain his current policy.  The Court reasoned that "because Mr. Vollrath received notice of his rights under the MVFRL and elected for lower coverage levels in

writing, . . . he validly waived his right to UM/UIM coverage equal to his bodily injury coverage." Id. (emphasis added).

Again, in Vollrath, the insured expressly elected in writing to maintain his current policy in signing the "Notice to named Insureds." No such evidence exists in this case. In short, Ms. Triboski-Gray's signature on the insurance application is not a "written request" as required by § 1734 of the MVFRL.

An "insurance company's obligation to issue a policy with UIM coverage limits in an amount equal to the policy's bodily injury liability coverage is not relieved unless it has received such a *written request*." Emig, 664 A.2d 559, 563 (Pa. Super. Ct. 1995). "[I]f the request for lower limits is not made in writing, then '(1) the lower limits allegedly selected by the insured are a nullity; and (2) UM/UIM coverage is deemed to be equivalent to the bodily injury liability limits.'" Cook, 155 F. App'x at 598 (quoting Nationwide Mut. Ins. Co. v. Heintz, 804 A.2d 1209, 1216 n.7 (Pa. Super. Ct. 2002), app. denied, 818 A.2d 505 (Pa. 2003). Accord Hinchey, 464 F. Supp. 2d at 438. Accordingly, this Court will enforce the insurance policy and nullify the lower UM/UIM coverage limits, thus deeming the UM/UIM coverage equivalent to the bodily injury liability coverage limits.

III. <u>CONCLUSION</u>

For the reasons set forth above, Ms. Triboski-Gray's Motion for Summary Judgment will be granted and Brethren Mutual's Motion for Summary Judgment will be denied. An appropriate order follows.

<u>s/ Thomas I. Vanaskie</u>
Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE BRETHREN MUTUAL INSURANCE  :
COMPANY,                       :
              Plaintiff     :
                               :
v.                             :   3:CV-06-0779
                               :   (JUDGE VANASKIE)
ANNE TRIBOSKI-GRAY,            :
              Defendant     :

ORDER

NOW, THIS 10th DAY OF JULY, 2008, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment (Dkt. Entry13) is DENIED.

2. Defendant's Motion for Summary Judgment (Dkt. Entry 16) is GRANTED. The UM/UIM coverage limits of the insurance policy at issue are deemed to be equal to the bodily injury liability coverage limits.

3. The Clerk of Court is directed to mark this matter CLOSED.

                                              s/ Thomas I. Vanaskie
                                              Thomas I. Vanaskie
                                              United States District Judge